UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

DOUGLAS E. JOHNSON,
  Plaintiff,
                 PRISONER
v.              :   CASE NO. 3:12-cv-552(VLB)

EDWARD BLANCHETTE, et al., :   MARCH 13, 2013
  Defendants.

## RULING AND ORDER

  The plaintiff, currently incarcerated at MacDougall Correctional Institution in Suffield, Connecticut ("MacDougall"), has filed a complaint *pro se* under 42 U.S.C. § 1983. The plaintiff now moves for leave to file an amended complaint to add additional claims for relief and state law malpractice and negligence claims. The motion to amend is granted. The Clerk shall docket the Amended Complaint attached to the motion. The court now considers the claims in the Amended Complaint. The plaintiff sues Drs. Edward Blanchette, Timothy Silvis and Omprakash Pillai and Advanced Practice Registered Nurse Barbara LaFrance. He seeks monetary damages and injunctive relief.

  Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id*. This requirement applies both where the inmate has paid the filing fee and where he is proceeding *in forma pauperis*. *See Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam). Rule 8 of the Federal Rules of Civil

Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to liberally construe a *pro se* complaint, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), the complaint must include sufficient factual allegations to meet the standard of facial plausibility.

The plaintiff alleges that he has been incarcerated since 1994. The plaintiff suffers from high blood pressure, diabetes, hepatitis C, dyslipidemia, mild chronic renal insufficiency and anemia. In May 2007, the plaintiff's high blood pressure medication was changed from Procardia to Lasix. The plaintiff claims that he complained that the new medication was causing him to feel dizzy, but medical personnel took no action in response to this complaint.

On June 4, 2009, at MacDougall, the plaintiff was working at his prison job. When he stood up after finishing his lunch, he felt dizzy, experienced pain in his left leg from the hip to his ankle and then fell to his knees. The nurse noted no

obvious injuries and referred the plaintiff to be seen by an Advanced Practice Registered Nurse ("APRN").  The plaintiff reported to APRN Barbara LaFrance that he was still experiencing pain in his leg, but that his dizziness had decreased.  Nurse LaFrance ordered a wheelchair and a bottom bunk pass for the plaintiff.  Two to three weeks after the June 4, 2009 incident , the plaintiff returned to work using the wheelchair.  On June 7, 2009, a physician also prescribed him a cane to assist him in walking.

On June 16, 2009, medical personnel admitted the plaintiff to the infirmary for observation due to left hip pain and edema in his legs.  Nurse LaFrance prescribed new medications to treat the plaintiff's various medical conditions and pain.  On July 26, 2009, the plaintiff slid to the floor while trying to stand up from using the toilet, but sustained no injuries

On August 10, 2009, an MRI of the plaintiff's cervical spine was done and indicated a disc extrusion at the C3-C4 level and that the disc had flattened the spinal cord.  This condition combined with other degenerative changes had caused severe spinal canal stenosis.  In mid-August 2009, Dr. Pillai submitted a request to the Utilization Review Committee ("URC") for a neurological consultation.  On August 19, 2009, the URC approved the request.

In September 2009, the plaintiff was evaluated in the Neurosurgery Department at the University of Connecticut Health Center ("UCONN") for complaints of neck and back pain.  The physician and physician's assistant diagnosed the plaintiff as suffering from damage to the spinal cord and nerve roots within the spinal cord with significant cord compression at the C3-C4 level.  They recommended that the plaintiff undergo an anterior cervical discectomy

with fusion at the C3-C4 level of his spine.  On October 1, 2009, the URC approved the request for the surgical procedure recommended by the neurologist.

On the January 6, 2010, at UCONN, the plaintiff underwent an anterior cervical discectomy with fusion at the C3-C4 level of his spine.  On January 7, 2010, the surgeon prescribed various medications for pain and discharged the plaintiff to the medical unit at MacDougall.  The plaintiff was seen at UCONN for a follow-up appointment in early February 2010.  The physician's assistant recommended that the plaintiff not take any non-steroidal anti-inflammatory drugs ("NSAIDS"), including Motrin for six months and to return for an x-ray in six months.

On February 15, 2010, the plaintiff's right leg gave out and he slid to the floor.  He experienced no injuries.  In July 2010, the plaintiff requested to have the excess fluid in his legs and back drained and that he be provided with therapy to assist him in regaining mobility.  The plaintiff claims that he received no response to this request.

In April 2011, he filed a grievance regarding pain in his left hip.  In response, the plaintiff was seen by a physician in early May 2011 and a new pain medication was added to his previous pain medications.

In July 2011, the plaintiff filed a grievance claiming that over-medication had caused the dizziness that led him to fall in June 2009.  He asked that the over-medicating stop.  In response, a nurse described the conditions that the plaintiff's current medications had been prescribed to treat and indicated that she had referred him to a physician for an appointment to discuss his medication concerns.  In August 2011, the plaintiff also submitted a request to a Health

Services Administrator regarding lack of treatment for his left hip pain and problems with his right leg. In response, Administrator Lightner indicated that she had referred the plaintiff to be seen by a physician.

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail on such a claim, a plaintiff must provide evidence of sufficiently harmful acts or omissions and intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. *See Id.* at 104-06. "[N]ot every lapse in prison medical care will rise to the level of a constitutional violation," id.; rather, the conduct complained of must "shock the conscience" or constitute a "barbarous act." *McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864 (2d Cir. 1970)).

The plaintiff claims that the defendants did not treat his complaints of dizziness and that in June 2009 he fell and hurt his neck and back. He alleges that the dizziness was caused by a change in high blood pressure medication that occurred in May 2007.

The court notes that in the medical records attached to the complaint, the fall that the plaintiff experienced on June 4, 2009, is described as a fall to his knees. There is no indication that the plaintiff fell and hit his head, neck or back. Furthermore, the medical records reflect that prior to this fall, the plaintiff had experienced difficulty ambulating, severe back pain, shortness of breath and pain

in his legs. According to the plaintiff's record of medications that he was taking in June 2009, he was not taking Lasix at the time of his fall.

An MRI of the plaintiff's cervical spine that was done in August 2009 and showed a compression of his spinal cord at the C3-C4 level of his spine that was due to degenerative changes. There is no indication that this condition was caused by the fall that occurred in June 2009.

The medical records supplied by the plaintiff demonstrate that medical personnel at MacDougall responded to his complaints in 2009, referred him for testing and evaluation of his symptoms and prescribed medication to treat his symptoms and other medical conditions. Nurse LaFrance prescribed the plaintiff a wheelchair and bottom bunk pass after he fell in June 2009 and was having difficulty ambulating. In addition, he was later admitted to the medical unit at MacDougall when he continued to have difficulty ambulating.

In August 2009, Dr. Pillai submitted a request that the plaintiff be seen by a neurologist based on the results of the plaintiff's spinal MRI. The plaintiff underwent a neurological evaluation in September 2009 and in January 2010 underwent surgery to treat spinal compression at the C3-C4 level.

The plaintiff does not mention the defendants other than in his description of parties. He generally asserts that the defendants have been over-medicating him and the medication has caused his dizziness. The plaintiff has not alleged facts to suggest that defendants Blanchette, Silvis or Pillai were deliberately indifferent to his medical conditions. The medical records submitted by the plaintiff show that medical personnel at MacDougall did respond to his

complaints of pain and other symptoms as well as the incidents in which his legs collapsed underneath him. The tests, evaluations and procedures performed on the plaintiff demonstrate that the medical personnel have not been indifferent to his medical needs. Thus, the claims against defendants Silvis, Blanchette and Pillai are dismissed. See 28 U.S.C. § 1915A(b)(1).

The plaintiff claims that Nurse LaFrance should not have prescribed him Motrin after he underwent spinal surgery. The medical records reflect that the plaintiff was discharged from UCONN with a prescription for Percocet to treat his pain. There was no instruction to avoid prescribing NSAIDs to the plaintiff. In mid-January 2010, Nurse LaFrance prescribed Motrin to treat the plaintiff's pain. During the plaintiff's subsequent follow-up appointment at UCONN on February 2, 2010, a physician's assistant advised the plaintiff not to take any NSAIDs, including Motrin, for six months because it would interfere with the fusion process. The plaintiff's handwritten list of medications that have been prescribed to him in 2010 includes an entry indicating Motrin was prescribed on February 22, 2010. The plaintiff did not attach any medical records to document this medication order.

The plaintiff does not indicate that he or the physician's assistant conveyed the recommendation against NSAIDs to Nurse LaFrance. Thus, it is not evident that Nurse LaFrance had any knowledge of the physician's assistant's recommendation that medical personnel at MacDougal refrain from prescribing NSAIDs to treat the plaintiff's pain for six months. The conduct by Nurse LaFrance constitutes, as most, negligence. Mere negligence, however, will not

support a section 1983 claim.  See *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law").  The claims against Nurse LaFrance are dismissed for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b)(1).

## ORDERS

The court enters the following orders:

(1) The Motion for Leave to File an Amended Complaint [Doc. No. 11] is GRANTED.  The plaintiff is reminded that pleadings must conform to Rule 8 of the Federal Rules of Civil Procedure or risk denial pursuant to *Jones v. Natn'l Commc'ns & Surveillance Networks*, 266 Fed.Appx.31, 2008 WL 482599 (C.A.2 (N.Y.)).  The Clerk is directed to docket the Amended Complaint that is attached to the motion to amend.  All claims against the defendants in the Amended Complaint are DISMISSED for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b)(1).  The court declines to exercise supplemental jurisdiction over any state law claims against the defendants.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 715-26 (1966) (holding that, where all federal claims have been dismissed before trial, pendent state claims should be dismissed without prejudice and left for resolution by the state courts).  If the plaintiff chooses to appeal this decision, he may not do so *in forma pauperis*, because such an appeal would not be taken in good faith.  *See* 28 U.S.C. § 1915(a)(3).  The Clerk is directed to enter judgment for the defendants and close this case.

(2) The plaintiff has filed a motion seeking injunctive relief. In that motion, the plaintiff seeks a court order directing the defendants to monitor his blood pressure and other vital signs twice a week, cut back on medications that he deems unnecessary, inform him of side effects of his medications, change his current diet plan to a high fiber, low-fat plan, answer medical requests in a timely fashion and provide him with physical therapy and medical equipment. The plaintiff has provided no facts that might give rise to his need for this relief. In addition, the motion contains only conclusory allegations of the defendants' involvement in the plaintiff's medical treatment. The court determines that the plaintiff has not demonstrated that he will suffer imminent harm if his requests for injunctive relief are not granted. The Motion for Preliminary Injunction and Temporary Restraining Order [Doc. No. 9] is DENIED.

(3) The Pro Se Prisoner Litigation Office shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit and a copy of the Order to the plaintiff.

SO ORDERED at Hartford, Connecticut this 6th day of February, 2013.

_____/s/_____
VANESSA L. BRYANT
UNITED STATES DISTRICT JUDGE